(72 South. 425)

No. 20730.

## MANUEL v. PORT BARRE LUMBER CO.

(June 30, 1916.)

*(Syllabus by the Court.)*

MASTER AND SERVANT ⟜278(1)—INJURIES TO SERVANT — NEGLIGENCE OF MASTER — PROXIMATE CAUSE OF INJURY.

The employer is not responsible in damages for the death of his employé unless it appears by a preponderance of proof that the death was the result of some fault or negligence on the part of the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 957; Dec. Dig. ⟜278(1).]

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by Azelien Manuel against the Port Barre Lumber Company. From a judgment for plaintiff, defendant appeals. Judgment annulled, and suit dismissed.

P. M. Milner and R. H. Marr, both of New Orleans, for appellant. Garland & Harry, of Opelousas, for appellee.

O'NIELL, J. This is an action for damages for the death of the plaintiff's son, who

was fatally injured in the machinery, while employed as assistant millwright, in the defendant's sawmill. The case was tried in the district court without a jury, judgment was rendered in favor of the plaintiff for $4,000, and the defendant appealed. Thereafter the plaintiff died, and his surviving sons and daughters have been made parties to the suit, as appellees.

It is alleged in the plaintiff's petition that the defendant was at fault and was guilty of gross negligence in failing to provide its employés with safe, adequate, and suitable appliances with which to do their work; that a belt connecting a revolving or driving shaft with a driven pulley on a slab conveyor was so worn out and had so many old pieces or patches in it that it often broke and had to be repaired and put back on the pulley many times every day, while the shaft was revolving; that there were long strips dangling from the belt, which made it dangerous to the employés working near it; that, while the plaintiff's son was helping the millwright to replace the belt on the shaft or pulley from which it had slipped, one of the strips dangling from the belt wound around the revolving shaft and another strip caught the arm of the plaintiff's son, dragged him against and around the revolving shaft, and killed him. The plaintiff alleged that the company had been warned repeatedly by its millwright and others that the worn-out belt was dangerous and unfit for use; but persisted in using it until the plaintiff's son was killed, when it was immediately discarded.

The defendant denied that any dangerous or unsafe appliance was furnished its employés, and that the fatal injury of the plaintiff's son was the result of any fault, negligence, or carelessness on its part; alleged that, although the belt referred to was not new, it was a safe and suitable belt for the light work required of it; and denied that it had ever been warned that the belt was dangerous or unsafe. The defendant denied that the fatal accident had happened in the manner alleged in the plaintiff's petition; and averred that it was the result of his own imprudence and carelessness in putting his hand on the belt that was hanging loose on the revolving shaft, and in carelessly and imprudently remaining in that dangerous position while his coemployé was putting the belt on the pulley on another shaft, some distance away. The defendant, therefore, averred that the fatal injury to the plaintiff's son had resulted entirely from his own negligence, carelessness, and imprudence.

The belt was composed of many pieces or patches, varying in width from 4 to 6 inches, laced together with cowhide belt lacings. The driving shaft had no pulley on it, nor key-seat, and was smooth and round at the place of the accident and for a distance or length of at least 4 feet each way. The driving shaft was 4 or 4½ feet above the floor, and the belt connected it with an iron pulley on the dead shaft about 12 feet above the floor and 16 or 18 feet away from the driving shaft. The driven shaft operated a slab conveyor. As the driving shaft, which served also for a driving pulley, was only 4 inches or 4½ inches in diameter, and the driven pulley on the slab conveyor was 18 inches in diameter, the latter revolved slowly as compared with the speed of the driving shaft.

On the occasion of the accident, the belt had broken and fallen from the pulley. It was the duty of the millwright and his assistant, the plaintiff's son, to repair it. Passing the belt over the dead shaft of the slab conveyor and round the revolving shaft near the floor, the plaintiff's son held the ends together while the millwright laced them. The plaintiff's son then held the belt off of the revolving shaft to prevent its being wound around the shaft while the millwright went upon the platform to put the belt on the dead pulley on the slab conveyor. The millwright testi-

fied that, when he went to put the belt on the pulley, he told the plaintiff's son to stand aside and be careful, and that the latter replied: "Never mind; I know my business." A few seconds later, just as the millwright put his hand on the belt and before he had time to lift it from the dead shaft to put it on the pulley, the accident happened. In an instant the belt was broken and pulled from the dead shaft and was whirling around the revolving shaft. When the engine was stopped, the plaintiff's son was found lying under or near the belt, dying. One of his arms was torn from his body and wrapped in the belting against the revolving shaft. He died half an hour after the accident, without having regained consciousness. The only other person present at the time of the accident was the foreman. He stood beside the plaintiff's son until the belt was laced, and the millwright went to put it on the pulley. Realizing that there was danger that the belt would break, he stepped aside, and, the moment he turned his back towards the plaintiff's son, he heard the pounding of the belt and the body of the young man being whirled around the revolving shaft. In the confusion he did not know what had happened to the plaintiff's son until the engine was stopped.

The millwright and the foreman of the mill, both of whom had had considerable experience with the operation of belts and pulleys, acknowledged that they could not possibly explain or understand how or why the accident happened. They testified that there was no set screw or wedge or key on the dead shaft on which the belt was hanging when the accident occurred. In our humble opinion, it would have had nothing to do with the accident if the belt had caught on a set screw or other protrusion on the shaft that was not revolving. The only possible explanation is that the belt clung to the revolving shaft and was wrapped around it, catching the boy's hand or arm in the folds of the belt and whirling him around the shaft. The only matter of detail that remains unexplained is: What caused the belt to cling to the revolving shaft that was smooth and turned freely within the loose belt? Defendant's counsel argue that the plaintiff's son must have put his hand on the revolving shaft, and that, when the millwright lifted the belt from the dead shaft above to put it on the pulley, it slipped along the revolving shaft to the boy's hand, which caused it to tighten and break, and it wrapped the boy's arm against the shaft. In support of that theory, they refer to the testimony of the millwright, to the effect that, when the engine was stopped and the belt was unwrapped from the shaft, the boy's arm was found between the belt and the shaft, with the palm of the hand and thumb against the shaft. Another witness, however, who assisted in unwrapping the belt from the shaft when the engine was stopped, testified that the dismembered arm was found between the folds of the belt; that is, that the belt was wrapped under and over the arm. The theory advanced by the defendant's counsel in argument is not in accord with the allegations of the answer, and is not plausible. The testimony shows that the accident happened before the millwright had time to lift the belt off of the dead shaft. There was then about 24 inches of slack in the belt, which the plaintiff's son was holding off of the revolving shaft. The most plausible explanation is that the plaintiff's son allowed that part of the slack belt above the revolving shaft to get between the shaft and that part of the belt below it. It is probable that that part of the belt which the young man was holding above the shaft bent where the ends were laced together, and that the ends dropped and were caught between the shaft and the lower part of the belt which was probably drawn tight against and under

the revolving shaft. This could have happened as readily with a new belt having only one laced joint as with an old belt, if the laced joint was above and near the revolving shaft; and that was the most convenient place for the men to have repaired it.

The plaintiff did not prove or attempt to prove the allegation that there were strings or strips dangling from the belt, nor does it appear that the ends of the belt lacings were left long enough to wrap around the revolving shaft. No complaint was made that the belt was dangerous. That it was old and made up of many patches or pieces was not the direct or proximate cause of the accident. The accident was not caused by the breaking of the belt, but by the belt's clinging to and wrapping around the revolving shaft; which, in turn, caused the belt to break.

The plaintiff's son was more than 20 years of age at the time of the accident and had had considerable experience with the machinery in the defendant's sawmill. He knew, or ought to have known, the danger of holding a slack belt over a revolving shaft. Although there was perhaps no particular negligence in the manner in which he handled the slack belt over the revolving shaft, nevertheless there is no proof that the accident was the result of any fault or negligence on the part of the defendant.

For the reasons assigned, the judgment appealed from is annulled, and the suit is dismissed, at the cost of the appellees.